**Doretha MORRIS, a minor child, by her mother and next friend, Gladys Morris, and Gladys Morris, individually, Plaintiffs,**

v.

**Francis E. AVALLONE and Bradford, Inc., a corporation of the State of Delaware, d/b/a Howard Johnson's, Defendants.**

Superior Court of Delaware,
New Castle.

Dec. 15, 1970.

Wayne N. Elliott of Prickett, Ward, Burt & Sanders, Wilmington, for plaintiffs.

Helen S. Balick, of the Legal Aid Society, of Wilmington, for defendant Francis E. Avallone.

James T. McKinstry of Richards, Layton & Finger, Wilmington, for defendant Bradford, Inc.

STIFTEL, President Judge.

Motion by defendant Avallone for a protective order under Rule 30(b) to prevent the plaintiffs from deposing Richard E. Samworth, Assistant Director of the Vocational Rehabilitation Division, Department of Public Instruction. Defendant claims that all matters as to which Mr. Samworth could testify are privileged.

The relevant facts are undisputed. In September of 1967 the plaintiff was struck by an automobile operated by defendant Francis Avallone. Plaintiff alleges that at the time of the accident, Avallone was operating the vehicle in the scope of his employment by Howard Johnson's, New Castle, Delaware. Bradford, Inc. is the successor in interest to the corporation which owned and operated the New Castle Howard Johnson's at the time of the accident.

Plaintiff has sued Mr. Avallone for negligently and wilfully or wantonly operating the automobile. Further, in addition to suing Bradford, Inc., under the doctrine of *respondeat superior*, the plaintiff alleges an independent cause of action. This separate cause of action is based on the allegation that Bradford, Inc.'s predecessor in interest knew that Francis Avallone was mentally subnormal. Further, it is alleged that Bradford, Inc.'s predecessor knew that because of this condition, when he operates an automobile on a public highway "he is a gross threat to the health and safety of others."

The plaintiff has issued a *subpoena duces tecum* to take the deposition of Mr. Samworth. Plaintiff says that the deposition is desired for the following reasons:

(a) To find out just what material was available to Howard Johnson's concerning Avallone's capabilities when they hired him. It may be that none of the material was made available to Howard Johnson's but it is an area of relavant inquiry. If for instance, they were put on notice that Mr. Avallone had physical or mental defects which would not make him suitable for driving an automobile or other vehicle in the course and scope of his employment, this would be relevant.

(b) To ascertain from Mr. Samworth what conversation he had with the management of Bradford, Inc., concerning Francis Avallone's progress as an employee. Since the crux of the independent allegation against Bradford, Inc., is that they ordered Avallone to drive in the scope of his employment when they knew or should have known he creates a hazardous condition when he drives an automobile on the road, any admissions to Mr. Samworth would be relevant.

(c) To perhaps lay ground work for impeachment of Mr. Selatos insofar as he states that in his capacity as manager of Howard Johnson's he thought Francis Avallone was of average intelligence. If Mr. Samworth in fact communicated with Mr. Selatos this could be a ground

for impeachment. This is not a collateral issue since a minimum level of intelligence is required in order to operate an automobile safely.

The State of Delaware has accepted the benefits and provisions of the Act of Congress known as the Vocational Rehabilitation Act, 29 U.S.C. Ch. 4. The Federal Act provides *inter alia* that the Secretary of Health, Education and Welfare is to formulate rules and regulations. When a State adopts a plan which meets federal requirements it receives benefits. 29 U.S.C. §§ 35, 37(b): Section 401.39 C.F.R. provides in pertinent part:

"Confidential Information:

(a) The State plan shall provide that the State agency will adopt such regulations as are necessary to assure that:

1. All information as to personal facts given or made available to the State or local rehabilitation agency, its representatives, or its employees, in the course of the administration of the vocational rehabilitation program, including lists of names and addresses and records of agency evaluation shall be held to be confidential.

2. The use of such information and records shall be limited to purposes directly connected with the administration of the vocational rehabilitation program and may not be disclosed, directly or indirectly, other than in the administration thereof, unless the consent of the client to such release has been obtained, either expressly or by necessary implication. Release of information to employers in connection with the placement of the client may be considered as release of information in connection with the administration of the vocational rehabilitation program * * * (certain specific exceptions then noted) * * *

Such information will be released to an organization or individual engaged in research only for purposes directly connected with the administration of the State vocational rehabilitation program * * * and only if the organization or individual furnishes satisfactory assurances that the information will be used only for the purpose for which it is provided; that it will not be released to persons not connected with the study under construction, and that the final product of the research will not reveal any information that may serve to identify any person about whom information has been obtained through the State agency, without written consent of such person and the State agency."

The State agency, consonant with this provision of the federal regulations, adopted the following regulation:

"Section 15. Confidential Information 15.1 Agency Regulations;

The State Agency has adopted regulations and policies to assure that:

(1) All information as to personal facts given or made available to the State Agency, its representatives, or its employees, in the course of administration of the vocational rehabilitation program, including lists of names and addresses and records of agency evaluation, will be held to be confidential.

(2) The use of such information and records will be limited to purposes directly connected with the administration of the vocational rehabilitation program and may not be disclosed, directly or indirectly, other than in the administration thereof, unless the consent of the client to such release has been obtained either expressly or by necessary implication."

Upon accepting the services of the State agency, Mr. Avallone signed a "certificate of acceptance", which stated:

"I understand that all information is held as confidential by the Division and is used only for the purpose for which it is provided."

The sole question to determine is whether the State agency intended to and did create a privilege against the disclosure of said information.

█ The mere fact that a communication is made in confidence, express or implied, does not of itself create a privilege. Usually a claim of privilege must be based either upon one of the exemptions from testimonial disclosure recognized by the common law or upon express provisions of statutes, rules, or other authoritative pronouncements. See VIII Wigmore on Evidence (3d Ed.), Ch. 81.

As stated in Annotation, "Forbidding Disclosure By Public Officer", 165 A.L.R. 1302, 1309–1310:

"* * * where a statute clearly, specifically, and unambiguously forbids a public official to divulge information, and forbids the disclosure specifically in a fact situation which is involved in a case before a court, the courts hold that there is actually no question of construction presented to them for determination and that the legislative pronouncement must be given full effect * * * it has sometimes been held that a statute relating to nondisclosure of information, records, and documents by public officers and employees needs no construction, where the meaning is unequivocal in forbidding disclosure so that the public department will, unimpeded by any hesitancy of persons reporting, secure accurate information and carry out the policies and duties of such department."

Even if the statute is not unequivocally clear as to the character of the confidential communication, the court can still determine that the legislative enactment intended to create a privilege. In XIII of his third edition, Wigmore lists four fundamental conditions that are recognized as being necessary to the establishment of a privilege against the disclosure of communications. They are:

"(1) The communications must originate in a *confidence* that they will not be disclosed.

(2) This element of *confidentiality must be essential* to the full and satisfactory maintenance of the relation between the parties.

(3) The *relation* must be one which in the opinion of the community ought to be sedulously *fostered*.

(4) The *injury* that would inure to the relation by the disclosure of the communications must be *greater than the benefit* thereby gained for the correct disposal of litigation." At p. 527. See State ex rel. State Highway Department v. 62.96247 Acres, Super.Ct., 193 A.2d 799, 805.

█ Coupled with the above four considerations, it should also be noted that there is a longstanding privilege which exempts government agencies or officials from disclosure of general material in their files at the instance of parties engaged in private litigation. Boske v. Comingore, 177 U.S. 459, 20 S.Ct. 701, 44 L.Ed. 846 (1900); Ex Parte Sackett, 74 F.2d 922 (9th Cir., 1935), cited in "Discovery Against Federal Administrative Agencies," 56 Harv.L.R. 1125. The rationale for the privilege could be stated as follows:

"An agency holding the information in a special capacity may not be compelled to produce the secrets of one citizen for the benefit of another any more than an attorney may be. Moreover, an individual should not be allowed to rummage through the files of a government agency, *prepared for special purposes in the public interest*, in the hope that he may receive some windfall of evidence." 56 Harv.L.R. at 1130 (emphasis added).

No distinction exists between a legislative mandate and a mandate promulgated by a state executive body pursuant to a general enabling statute of the Legislature. See 1 Davis, Administrative Law, 503. Here as a consequence of a Federal Direc-

tive, the State Agency has stated that the information is to be "confidential" and can be released only for the administration of the program or in other instances with the consent of the client. The defendant refuses to consent, and the present requested use bears no "direct" connection to the "administration of the vocational rehabilitation program." Rather, the information is sought for the benefit of a private party litigant.

■ On application of Wigmore's conditions for disclosure to the facts before me, it becomes apparent that the privilege should be upheld:

First, it is clear from both the federal and state regulations that Mr. Avallone could justifiably have the impression that the information he was called upon to supply would be held confidential.

Second, it is also clear that the federal and state regulations as to confidentiality are directed toward the policy of full disclosure by the client, for purposes of his effective rehabilitation and eventual employment, so that the 'administration' of the program would be effective. The reason for the privilege is undoubtedly twofold. First, it is to prevent exposure to public gaze the records of clients who are receiving treatment and benefits under the auspices of the statutory scheme. Coupled with this, and perhaps of more importance, is the desire to provide an incentive for the client to take advantage of the services, and receive the fullest benefit thereof by providing all the information necessary without fear of disclosure.

Third, as pointed out by the Legal Aid Society, it is in the best interest of the community that those individuals who are either mentally or physically handicapped are aided in a program to bring them to their best functioning level.

Finally, I feel that a private party litigant's interest is not as great as that of the entire community in its effort to help the handicapped. In balancing the pos-

sible injury to the interests in question, it is the Court's belief that the Agency's functioning must be protected.

As stated by the Legal Aid Society:

"Not only would such a disclosure violate Mr. Avallone's trust in the Vocational Rehabilitation Division, but it would tend to undermine the purpose of the Vocational Rehabilitation Act in getting disabled people, who usually are sensitive about their disability, to accept its service."

Protective Order granted. The taking of the deposition of Richard E. Samworth, Assistant Director of Vocational Rehabilitation Division, Department of Public Instruction, State of Delaware, is forbidden.

It is so ordered.